LAKE MICHIGAN FEDERATION OF TEACHERS v LAKE
MICHIGAN COLLEGE

1. APPEAL AND ERROR—STATUTES—MICHIGAN EMPLOYMENT RELATIONS
    COMMISSION—STANDARD OF REVIEW—FINDINGS OF FACT—CON-
    STITUTIONAL LAW.

    The statutory standard of appellate review of Michigan Employ-
    ment Relations Commission Board findings of fact is that "[t]he
    findings of the board with respect to questions of fact if sup-
    ported by competent, material and substantial evidence on the
    record considered as a whole shall be conclusive"; this standard
    comports with a section of the Michigan Constitution which
    provides that "[t]his review shall include, as a minimum, the
    determination whether such final decisions, findings, rulings
    and orders are authorized by law; and, in cases in which a
    hearing is required, whether the same are supported by compe-
    tent, material and substantial evidence on the whole record"
    (Const 1963, art 6, § 28; MCLA 423.23[e]).

2. CONSTITUTIONAL LAW—APPEAL AND ERROR—ADMINISTRATIVE LAW
    —REVIEW—STANDARD OF REVIEW—EVIDENCE.

    What the drafters of the Michigan Constitution intended, by use
    of the sentence "[t]his review shall include as a minimum the
    determination whether such final decisions, findings, rulings
    and orders are authorized by law; and, in cases in which a
    hearing is required, whether the same are supported by compe-
    tent, material and substantial evidence on the whole record",
    was a review which considers the whole record, not just those
    portions of the record supporting the findings of the adminis-
    trative agency; although such a review does not attain the
    status of de novo review, it necessarily entails a degree of
    qualitative and quantitative evaluation of evidence considered
    by an agency (Const 1963, art 6, § 28).

3. LABOR RELATIONS—MEDIATION—IMPASSE—POWERLESS BARGAINING
    REPRESENTATIVES—BAD FAITH—PUBLIC EMPLOYMENT RELATIONS
    ACT—RECORD—EVIDENCE—STATUTES.

    A charge that an employer who requests mediation in contract

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 2 Am Jur 2d, Administrative Law §§ 621, 683, 684, 688–690.
[3] 48 Am Jur 2d, Labor and Labor Relations § 1196.
[4, 5] No reference.

negotiations with its employees' labor union when no impasse yet exists and which uses powerless bargaining representatives to negotiate for it is engaging in bad faith dilatory tactics in violation of the public employment relations act will not be sustained where the record affirmatively discloses that an impasse did exist and there is no evidence presented that the employer's negotiators are powerless; a request for mediation will seldom be found to be a bad faith dilatory tactic (MCLA 423.210).

4. Labor Relations—Public Employers—Offer—Strikes—Unreasonable Restriction—Bargaining.

A rule of law prohibiting a public employer from making a better offer once a strike has started and employees have been replaced would impose an unreasonable restriction on the collective bargaining process.

5. Labor Relations—Contracts—Salary Provisions—Unfair Labor Practices.

There is no legal requirement that every successive collective bargaining contract include salary provisions more advantageous to the employees than the contract before it, on penalty of finding that the employer engaged in unfair labor practices.

Appeal from Michigan Employment Relations Commission. Submitted Division 2 February 10, 1975, at Detroit. (Docket No. 19816.) Decided April 28, 1975. Leave to appeal applied for.

Lake Michigan Federation of Teachers brought charges against Lake Michigan College for unfair labor practices. The Michigan Employment Relations Commission dismissed the charges. Plaintiff appeals. Affirmed.

*Fieger, Golden & Cousens* (by *Bernard J. Fieger* and *Gayle Boesky),* for plaintiff.

*Vedder, Price, Kaufman & Kammholz* (by *Robert C. Claus)* and *Spelman, Taglia, Meek & Lagoni,* for defendant.

Before: D. E. HOLBROOK, P. J., and DANHOF and N. J. KAUFMAN, JJ.

PER CURIAM. Plaintiff appeals from a decision and order of the Michigan Employment Relations Commission affirming the decision and adopting the recommended order of an administrative law judge dismissing the unfair labor practice charges filed against the defendant college under the provisions of the public employment relations act (PERA), MCLA 423.201 *et seq.;* MSA 17.455(1) *et seq.*

The Lake Michigan Federation of Teachers has been the bargaining agent for the faculty at Lake Michigan College since 1966 when it received certification. The federation entered into a number of collective-bargaining agreements with the college, the last of which became effective on December 28, 1970, and expired on August 12, 1972. This contract included as its central feature a "salary grid" whereby compensation was computed based upon length of service as the vertical increments, while academic degree and credits earned comprised the horizontal increments. Bargaining for the succeeding contract began on February 8, 1972.

From February 8 to August 8, 1972, the parties held approximately 16 negotiating sessions. However, there still remained numerous unresolved issues including salary and duration of the contract. The federation reduced its original salary demands by $400, but the college held firm to the position that no salary increase could be paid during the next school year. Later in August, the college requested mediation and sessions were held then and in September. Little was accomplished, and subsequently the federation requested fact-finding.

The fact-finder's report, which included a recom-

mendation that the current salary grid be increased by 5.5 percent, was issued on January 11, 1973 and was accepted by the federation but rejected by the college. Further meetings were held in February at which the college offered a salary increase for subsequent years coupled with a salary freeze for the current year but demanded that the salary grid itself be eliminated. These provisions, with the addition of agreement on subsidiary issues, formed the basis of a tentative contract agreed to by the union negotiating team. However, on February 8, this tentative agreement was rejected by vote of the federation membership.

At this point, the college insisted upon elimination of the salary grid, taking the position that a salary increase would not be considered unless the federation came within the "ball park" by agreeing to this provision. Another unproductive meeting was held on February 13, 1973; on February 14 unfair labor practice charges were filed by the federation; and on February 15 the federation called a strike in which at least 40 teachers participated. Following a warning, the striking teachers were terminated on March 6, 1973, and replacements were hired. The propriety of this action on the part of the college is not involved in the present lawsuit.

On March 19, 1973, a hearing was held before administrative law judge Joseph B. Bixler, but negotiations continued between the parties. On March 22, the federation made an offer involving implementation of the fact-finder's report if the decision of the administrative law judge was favorable to the federation, and acceptance of the salary freeze if it was not. The college declined this offer, and, following another meeting with a mediator, made an offer to the federation allowing the

terminated teachers to resign and including a modified salary freeze. The federation rejected this offer, and no further negotiations were held.

On July 2, 1973, the administrative law judge issued his opinion and recommended order. He concluded that the respondent college: "has fulfilled its bargaining obligation. What the respondent has engaged in is nothing more than hard bargaining. The record, up to the time of the hearing on March 19, does not support a finding that respondent has failed to fulfill the duty to bargain in good faith as imposed by section 10(e) of PERA [MCLA 423.210(e); MSA 17.455(10)(e)]." The administrative law judge recommended "to the commission that the charges and amended charges in this matter be dismissed in their entirety". This recommendation was accepted by the commission, which, in a unanimous decision and order dated February 25, 1974, stated: "[W]e conclude that the administrative law judge correctly determined that the employer engaged in no more than hard bargaining and did not violate its duty to bargain in good faith as defined by section 10(e) and is further defined by section 15, MCLA 423.215; MSA 17.455(15) which specifically provides that 'such obligation does not compel either party to agree to a proposal or require the making of a concession.' " From this decision, the federation appeals.

The scope of review by an appellate court of factual determinations made by the Michigan Employment Relations Commission has recently been discussed by Justice FITZGERALD writing for the Michigan Supreme Court in *Michigan Employment Relations Commission v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 121; 223 NW2d 283 (1974):

"The standard of appellate review of MERC Board findings of fact is set forth in the labor mediation act as follows:

" ' * * * The findings of the board with respect to questions of fact if supported by competent, material and substantial evidence on the record considered as a whole shall be conclusive. * * * ' MCLA 423.23(e); MSA ' 17.454(25)(e).

"This standard comports with Const 1963, art 6, § 28 which sets forth the minimum constitutional scope of judicial review of administrative decisions.

" ' All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. *This review shall include, as a minimum,* the determination whether such final decisions, findings, rulings and orders are authorized by law; and, *in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record.* * * * ' (Emphasis supplied.)"

Language identical to that used in the above mentioned statute is found in the public employment relations act. See MCLA 423.216(e); MSA 17.455(16)(e). Similar language is found in the administrative procedure act. See MCLA 24.306(1)(d); MSA 3.560(206)(1)(d).

Following a discussion of the formulation of this standard during extensive debate at the Constitutional Convention of 1961, Justice FITZGERALD concluded:

"The cross-fire of debate at the Constitutional Convention imports meaning to the 'substantial evidence' standard in Michigan jurisprudence. What the drafters of the Constitution intended was a thorough judicial review of administrative decision, a review which considers the whole record—that is, both sides of the record—not just those portions of the record supporting

the findings of the administrative agency. Although such a review does not attain the status of *de novo* review, it necessarily entails a degree of qualitative and quantitative evaluation of evidence considered by an agency. Such review must be undertaken with considerable sensitivity in order that the courts accord due deference to administrative expertise and not invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views. Cognizant of these concerns, the courts must walk the tightrope of duty which requires judges to provide the prescribed meaningful review." 393 Mich at 124.

With these principles in mind, we turn to an examination of the record in the present case. Accordingly, the central issue becomes: Is the conclusion of the Michigan Employment Relations Commission affirming that of the administrative law judge that the college engaged only in hard bargaining, and that the federation had not established that the college had unlawfully refused to bargain in good faith, supported by substantial evidence? We hold that it is.

The federation contends that the administrative law judge erroneously determined that bargaining between the parties occurred between February 8 and August 8, 1972, when in fact, the federation alone made concessions during this period. There is nothing in the administrative law judge's opinion to indicate that he believed that the college made major concessions during this period. The record does substantiate his finding that many bargaining sessions were held; the fruitfulness of these meetings from the federation's point of view is not controlling.

The federation also argues that the defendant engaged in "bad faith dilatory tactics" by requesting mediation when no impasse yet existed. The

record affirmatively discloses that an impasse did exist; within the same month the federation in its request for fact-finding acknowledged the complete lack of bargaining success. Furthermore, mediation is an aid to collective bargaining encouraged by Michigan law. A request for mediation will seldom be found to be a bad faith dilatory tactic.

The federation's suggestion that the college's effort to eliminate the grid system so late in the negotiating process indicated bad faith is refuted by the fact that it was at that time that the college expressed a willingness to consider salary increases. At the very next meeting, the college altered its demand for elimination of the grid by offering to permit horizontal salary increases to reflect advanced academic work for the current year, and with the retention of the grid for the next two school years.

Another example of bad faith, according to the federation, is the fact that the negotiators for the college had no authority to agree to salary increases. While the use of powerless bargaining representatives would indicate bad faith, the federation has failed to establish by evidence that this is what occurred here. The federation claims that the college made no significant change in its position in salary increases throughout the entire period of negotiations. The facts as previously set forth refute this claim.

The federation states that the offer made by the college on March 29, 1973, after the striking teachers had been replaced, was evidence of bad faith because that offer was better than any made before the strike. A rule of law prohibiting a public employer from making a better offer once a strike has started and employees have been replaced would impose an unreasonable restriction upon

the bargaining process, and, as a logical extension of the plaintiff's argument, demonstrates the unsoundness of that position.

The principal complaint of the federation is that the college was unwilling to agree to a salary increase for the 1972–1973 school year. The college's alleged unwillingness to compromise is cited as evidence of bad faith by the federation. The federation maintains that from the beginning of negotiations the college resolved to grant absolutely no salary increase and that it remained inflexible on this issue. Again, the record refutes the contention that the college refused to compromise in that a salary adjustment was to be included in the proposed contract for the succeeding two school years.

Economic requirements to the contrary notwithstanding, there is no legal requirement that every successive collective bargaining contract include salary provisions more advantageous to the employees than the contract before it, on penalty of finding that the employer engaged in unfair labor practices. To force the employer to constantly improve the salary provision of any subsequent collective bargaining contract would be to compel a "party to agree to a proposal or require the making of a concession" contrary to the expressed terms of MCLA 423.215; MSA 17.455(15).

There is competent, material, and substantial evidence on the whole record to support the findings of the administrative law judge as accepted by the MERC board despite the objections raised by the plaintiff federation. Consequently, we affirm the decision and order of the commission.

As an ancillary issue, the federation contends that the administrative law judge erred by denying its motion to reopen the hearing to receive

evidence on the charge that a better offer had been made after the strike. The administrative law judge did permit the filing of affidavits which brought all of the relevant information to his attention. Additional formal testimony would have served no purpose. The administrative law judge did not abuse his discretion in denying the motion.

Affirmed. Costs to defendant.