**Dr. Comer HEATH, III, Plaintiff,**

**v.**

**HIGHLAND PARK SCHOOL DISTRICT, Highland Park Community College Board of Trustees, Titus McClary, John H. Holloway II, Winona G. Humphrey, and Arneta Waterhouse, Individually and as Members of the Highland Park Community College Board of Trustees, jointly and severally, Defendants.**

**No. 91–CV–72471.**

United States District Court,
E.D. Michigan, S.D.

Sept. 2, 1992.

James W. McGinnis, Detroit, Mich., for plaintiff.

Samuel McCargo, Diane M. Fifer, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

EDMUNDS, District Judge.

This matter is before the Court on Defendants' motion for summary judgment and Plaintiff's motion for partial summary judgment. Plaintiff filed a three count complaint alleging constitutional violations under 42 U.S.C. § 1983, breach of contract and intentional infliction of emotional distress. Plaintiff alleges he was wrongfully terminated from his position as president of Highland Park Community College. For the reasons stated in this opinion, Defendants' motion for summary judgment is granted on Count I. Counts II and III are dismissed without prejudice, thereby rendering Plaintiff's motion for summary judgment on Count II moot.

### Facts

Plaintiff Dr. Comer Heath was hired as President of Highland Park Community College pursuant to a four-year employment contract commencing July 22, 1986, and expiring June 30, 1990. On May 31, 1989, his contract was renewed for three years commencing July 1, 1989, and expiring June 30, 1992. An extension to the contract was executed on June 28, 1990, wherein Plaintiff's employment was extended to June 30, 1993. On July 1, 1990, Defendants Arneta Waterhouse and Winona Humphrey became members of the Highland Park Community College Board of Trustees. Eight months later, on February 26, 1991, Defendant Humphrey filed written charges with the Board alleging misconduct and poor work performance by Plaintiff. Plaintiff was suspended from his position in February, 1991. Following several closed Board meetings and closed hearings at which Dr. Heath and his counsel were present, the Board, by a four to three margin, voted to terminate Dr. Heath's employment effective May 14, 1991.

Dr. Heath claims that his termination was politically motivated as a result of a battle for control over Highland Park Community College, Highland Park City Council, and the city administration. From January, 1984, through December, 1991, Dr. Heath was a member of the Highland Park City Council. During much of his tenure, Defendants John H. Holloway and Titus McClary served as officers in the Highland Park Department of Public Safety and as members of the Highland Park Community College Board of Trustees. Dr. Heath claims that as a city councilmember he supported the Director of the Department of Public Safety who demoted Holloway and McClary. He also asserts that he supported the incumbent Mayor in the 1991 election against a challenge from McClary—a move Dr. Heath claims angered McClary. Dr. Heath further claims that Holloway and McClary, as members of the Community College's Board of Trustees, retaliated against Dr. Heath by voting to terminate his employment as President of the College. Dr. Heath claims that Holloway told him, "I hear that you are trying to get the mayor to take my job, councilman. I hope that is not true. If it is, I am going to have to make some moves of my own on you."

The other two Board members who voted to terminate Dr. Heath's employment were Winona Humphrey and Arneta Waterhouse. Dr. Heath claims that he openly supported their opponents in the 1990 Board of Trustees election and that he received verbal warnings from many people, including former Board members, that Humphrey and Waterhouse were going to fire him.[1]

The Defendants claim that politics played no role in Dr. Heath's discharge. Instead, they claim that Dr. Heath's employment was terminated as a result of his participation in various forms of misconduct while President of Highland Park Community College. The alleged misconduct includes inappropriate expenditure of funds, unjust enrichment of employees, violation of nepotism policies, insubordination, and withholding of information and providing misinformation to the Board. In addition, the Defendants assert that Dr. Heath failed to supervise employee grievance procedures, comply with auditors' reports, manage fiscal affairs of the College, and supply the Board with timely and adequate information pertaining to the College's finances. After his termination, Plaintiff filed a three count complaint against the Board, its members individually, and the Highland Park School District alleging: (i) violations of the First, Fifth, and Fourteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. § 1983; (ii) breach of contract; and, (iii) intentional infliction of emotional distress.

### Standard for Summary Judgment

In considering a motion for summary judgment, the Court may grant the motion only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). As the Supreme Court ruled in *Celotex*, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The court must view the allegations of the complaint in the light most favorable to the non-moving party. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 265, 106 S.Ct. 2505, 2519, 91 L.Ed.2d 202 (1986).

However, the mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient

---

**1.** Plaintiff's affidavit sets forth several specific threats made by the individual defendants regarding Dr. Heath's employment with the Community College. Those threats, along with Plaintiff's entire affidavit are taken as true for purposes of this motion.

evidence upon which a jury could reasonably find for the non-movant. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. Also, where the nonmoving party must meet a higher burden of proof than usual, that party must meet the same burden in resisting the motion for summary judgment. *Id.*

■ Summary judgment may even be granted where a defendant's state of mind is at issue. A plaintiff may not defeat a motion for summary judgment even where defendant's state of mind is at issue by merely asserting that a jury might disbelieve the defendant's denial of malice, for instance. "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Id.* at 256, 106 S.Ct. at 2514. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue' for trial." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989) (citing *Matsuchita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

### 42 U.S.C. § 1983

To prevail in a civil rights action under 42 U.S.C. § 1983, a plaintiff must plead and prove that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the Constitution and law of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Section 1983 alone creates no substantive rights; rather it is a vehicle by which a plaintiff may seek redress for deprivations of rights established in the Constitution or federal laws. *Baker v. McCollon*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979). The statute applies only if there is a deprivation of a constitu-

tional right. *See e.g., Paul v. Davis*, 424 U.S. 693, 699–701, 96 S.Ct. 1155, 1159, 47 L.Ed.2d 405 (1976); *Baker*, 443 U.S. at 146–47, 99 S.Ct. at 2695–96; *Cornelius v. Town of Highland Lake*, 880 F.2d 348, 352 (11th Cir.1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990); *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir.1982). Thus, "[t]he first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws'" of the United States. *Baker*, 443 U.S. at 140, 99 S.Ct. at 2692.

### The Fourteenth Amendment

Plaintiff alleges that the procedures used by the Board in terminating his employment denied him due process of law. Specifically, Dr. Heath alleges that (i) notice of the charges against him was inadequate; (ii) he should have been allowed to call the individual defendants as witnesses at the Board hearings; and, (iii) he was entitled to a formal evidentiary hearing at the pre-termination stage because no post termination hearing was available.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." Once a plaintiff has established that he has a constitutionally protected liberty or property interest in his employment, the Court must determine "what process is due, and particularly the question of whether a federal cause of action is the appropriate remedy for [his] deprivation. Not every deprivation of liberty or property requires a pre-deprivation hearing or a federal remedy." *Ramsey v. Board of Education*, 844 F.2d 1268, 1272 (6th Cir.1988).

Although Plaintiff has not specifically alleged deprivation of property, the linchpin of his due process argument is *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), a case which addresses the due process required to protect a property interest in tenured employment.[2] Specifically,

---

2. Deprivation of a liberty interest may be established "[w]here a person's good name, reputation, honor, or integrity is at stake because of

what the government is doing to him...." *Board of Regents v. Roth*, 408 U.S. 564, 572–74,

*Loudermill* addressed the pre-termination process to be accorded a public employee dischargeable only for cause. The Court recognized that an individual has a significant property interest in his employment, thus "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story". *Id.* 470 U.S. at 546, 105 S.Ct. at 1495 (citations omitted). While the Court stated that "in general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action", the Court's holding "rest[ed] in part on the provisions in Ohio law for a full post-termination hearing". *Id.* (citations omitted).

Plaintiff interprets *Loudermill* to require a full evidentiary hearing pre-termination where there is no post-termination hearing available. Plaintiff argues that Defendants did not provide him a full evidentiary hearing before he was fired and that "Michigan law does not afford a post-termination hearing on the discharge". (Plaintiff's Answer at 15). Plaintiff's interpretation of *Loudermill* fails to recognize that the Sixth Circuit has distinguished between tenured and non-tenured public employees in determining the availability of a § 1983 action to remedy an alleged deprivation of due process.

In *Ramsey v. Board of Education*, 844 F.2d 1268 (6th Cir.1988), the Sixth Circuit, citing *Loudermill*, recognized the importance of an individual's property interest in employment. However, the court stated that

> [E]ven when a person's means of livelihood is connected to the deprivation claim, due process does not always require a pre-deprivation hearing or support a section 1983 action when any interest in employment is affected. When a person is hired for a *fixed period of time* or pursuant to a contract providing for employment 'at will' or impliedly subject to removal upon the bona fide elimination of the position, and that person is dismissed prematurely, *no federal cause of action lies under section 1983 to redress what is best characterized as an ordinary breach of contract.*

*Id.* at 1273 (emphasis added, citations omitted).

The court reasoned that a non-tenured employee has a property interest which is defined by his contract, thus, "the deprivation of that finite interest can be compensated adequately by an ordinary breach of contract action". *Id.* at 1274. This is not true of a tenured employee, whose premature loss of employment "is neither easily defined nor easily compensated by a typical breach of contract action". *Id.* See also *Bennett v. Marshall Public Library*, 746 F.Supp. 671, 679 (W.D.Mich.1990) ("a property interest in one's employment for a specific term can be adequately redressed in a state breach of contract action").

■ The parties to the present case do not deny that Plaintiff was employed pursuant to a four-year contract.[3] The face of the contract clearly indicates that Plaintiff was not a tenured employee.[4] Therefore under *Ramsey*, a state court breach of contract action provides Plaintiff with an adequate state remedy for the loss of his employment, and a § 1983 action cannot be maintained.

### The Fifth Amendment

■ The due process clause of the Fifth Amendment applies only to federal action,

92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972) (citations omitted).
*See also Lake Michigan College Federation of Teachers v. Lake Michigan Community College*, 518 F.2d 1091 (6th Cir.1975). Because Plaintiff has not alleged deprivation of a liberty interest nor has he cited any relevant case law, that issue is not properly before this Court.

**3.** In fact, Plaintiff argues in his own Motion for Summary Judgment that the existence of the contract precludes Defendants from relying on

alleged misconduct which occurred outside the four year contract period.

**4.** Paragraph eight (8) of Plaintiff's employment contract provides:

> It is further understood and agreed that the President is not granted administrative tenure in his/her administrative classification or position by virtue of this Agreement or otherwise.

not to private or state action. Where no defendant is associated with the federal government, a claim under the Fifth Amendment should be dismissed. *Three Rivers Cablevision Inc. v. City of Pittsburgh*, 502 F.Supp. 1118, 1134 (W.D.Penn.1980). Defendants in this case are not associated with the federal government, thus Plaintiff has no Fifth Amendment claim.

*The First Amendment*

Dr. Heath alleges that he was fired in violation of the First Amendment's guarantee of free political association. Specifically, he contends that his employment with Highland Park Community College was terminated because he openly supported Highland Park's city administration while he was a member of the city council and he supported candidates who opposed current school board members in the last election. Dr. Heath characterizes his termination as a violation of his right to free political association, but the claim is better characterized as a violation of Dr. Heath's free speech rights because, assuming his termination was politically motivated, his firing came after actions he took and words he spoke or wrote on behalf of certain candidates and against other candidates. Political association claims usually concern *membership* in a political party and not *active support* of one party or candidate over another. *See Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Taken either way, the Board of Trustees did not violate Dr. Heath's First Amendment rights because Dr. Heath's activities are not protected under either claim.

■ To establish a prima facie case of politically motivated discharge, Dr. Heath must first show that his conduct was constitutionally protected. The question of whether Dr. Heath's speech was protected by the First Amendment is a matter of law to be determined by this court. *Meyers v. Cincinnati*, 934 F.2d 726, 729 (6th Cir. 1991); *Langford v. Lane*, 921 F.2d 677 (6th Cir.1991). Dr. Heath must then establish,

by a preponderance of the evidence, that the protected conduct was a "substantial" or "motivating" factor in the decision to terminate his employment. The motivation behind the Board's decision to terminate Dr. Heath's employment is a question of fact for the jury. *Meyers* at 729; *Langford* at 680. The burden then shifts to the Defendants to show that their decision to fire him would have been the same absent the protected conduct. *Mt. Healthy Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

■ To establish that his conduct was constitutionally protected, Dr. Heath must, as a matter of law, show (i) that the speech at issue involves a matter of public concern; and (ii) that "the interests of the [employee], as a citizen, in commenting upon matters of public concern [outweigh] the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Langford v. Lane*, 921 F.2d 677, 690 (6th Cir.1991), *citing Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734-35, 20 L.Ed.2d 811 (1968); *see also Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). A political association claim implicates only the second prong of the test, *see Kinsey v. Salado Independent School District*, 950 F.2d 988, 993 (5th Cir.1992), but because Dr. Heath's speech, activities, or association clearly involve a matter of public concern, namely, the administration of the city of Highland Park and the operation of Highland Park Community College, this Court need only consider the balancing of the private citizen's right to comment on public affairs versus the efficiency of state services under either a political association or a free speech claim. Considerations relevant in determining the state's interest are "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388, 107 S.Ct.

2891, 2899, 97 L.Ed.2d 315 (1987), *citing Pickering,* 391 U.S. at 570–73, 88 S.Ct. at 1735–37.

In *Kinsey v. Salado Independent School District,* the court held that a public school superintendent's free speech and political association rights were not violated when he was suspended by school board members who were elected despite his active opposition. Kinsey, the superintendent, had become the center of controversy in the 1988 Salado school board election; the majority of the board at the time supported Kinsey, but a minority of board members as well as some challengers ran as a slate opposed to further extensions of Kinsey's contract. During the campaign, Kinsey had numerous conversations with Salado citizens in which he voiced his support for the then board majority and concerns about the minority and the challengers. In addition, he had a letter published in the local newspaper in which he complimented the majority of the Board for their performance. *Id.* at 990. Kinsey's opposition won the election and months later fired Kinsey due both to a poor working relationship and to issues relating to teacher certification. Kinsey subsequently brought suit under § 1983, alleging that his First Amendment rights had been violated because he had been terminated as a result of his "active support of and association with the political opposition" to the majority, who had retaliated against him "because of his political position, and because of his speaking out for candidates of his choice." *Id.* at 991.

The court applied the *Pickering* balancing test and held that Kinsey's "First Amendment rights [did not] outweigh the [Board's] interest in the effective provision of public services." *Id.* at 996, *quoting Coughlin v. Lee,* 946 F.2d 1152, 1157 (5th Cir.1991). The *Kinsey* court relied in part upon the recent Supreme Court decision in *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), where the Court held that a "government's interest in securing employees who will loyally implement its policies can be adequately served by choosing or dismissing certain high-level employees on the

basis of their political views." *Rutan,* 497 U.S. at ——, 110 S.Ct. at 2737. In the balance, the *Kinsey* court held that Kinsey's activities involved matters of public concern because they concerned an evaluation of the performance of elected school board officials, an evaluation the public should have taken most seriously given that it was made by the district's superintendent. Nevertheless, Kinsey's interest in speaking on matters of public concern were outweighed by the necessity for a close working relationship between the school board and the superintendent. As superintendent, one of Kinsey's primary duties was to advise and guide the Board's decisions regarding finances and personnel. The board was dependent upon Kinsey, as the board's administrator, to implement its policies and decisions. *Kinsey,* 950 F.2d at 995–96. Therefore, Kinsey "possessed the power to 'make or break' board policies which 'arguably afforded him the opportunity to thwart or forward [its] goals.'" *Id.* at 996, *quoting Gonzalez v. Benavides,* 712 F.2d 142, 149 (5th Cir.1983).

Similarly, Dr. Heath has the right as a private citizen to comment on matters of public concern, such as city administration and the composition of the school district's Board of Trustees. Moreover, as President of Highland Park Community College, having worked closely with members of the Board of Trustees and being in the best position to identify issues with which the Board would have to concern itself, Dr. Heath was in an excellent position to make an evaluation of the candidates for the Board.

Weighing more heavily on the other side of the *Pickering* balance, however, is the fact that the President of the Community College and the members of the Board of Trustees must maintain a close working relationship if the Board of Trustees is to "promot[e] the efficiency of the public services it performs through its employees," *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734–35, namely, education. Dr. Heath and the new majority of the Board apparently have significant political differences. These differences could have led to a

breach of the relationship between the Board and the President, which would have been likely to have an adverse impact on the operation of the College. As the terms of Dr. Heath's employment contract make clear, the Board needs the President to advise it on numerous matters affecting the College and to implement its decisions and policies.[5] As President of the College, Dr. Heath would be able to thwart the policy decisions made for the College by the majority of the elected members of the Board of Trustees, a threat that would be very real if the President and the Board have political differences and different visions for the College. Simply put, if the President and Board have strong disagreements and cannot trust each other, there is a strong likelihood that the College will not be able to provide education for its students and the members of the Highland Park community as well as it should. Thus, it is manifest that under the *Pickering* analysis Dr. Heath's conduct was not protected under the First Amendment because the state's interest in the efficiency of the services provided by the Board and the President outweigh the President's right as a private citizen to comment on public affairs. Therefore, the issue of whether Dr. Heath's activities were a "substantial" or "motivating" factor in the decision to terminate his employment (causation) need not be reached. Given no underlying constitutional deprivation, neither the Highland Park School District, the Board of Trustees of the Community College, nor the individual members of the Board can be held liable for depriving Dr. Heath of his First Amendment rights under § 1983.[6]

*Immunity for Trustees in their individual capacities*

▇ Even if Dr. Heath's activities were protected by the First Amendment, he would be unable to maintain a § 1983 cause of action against the trustees in their individual capacities because they are entitled to qualified immunity.

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would know." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Whether the individual trustees violated Dr. Heath's "clearly established" right of freedom of speech or political association requires this Court to apply the *Pickering* balancing test as discussed *supra*.

"[I]n the qualified immunity context, it is the responsibility of the court to determine if the law was so clearly established at the time of the incident that a reasonably competent public official should have known that a course of action would be inconsistent with a public employee's rights as defined in *Pickering*." *Guercio v. Brody*, 911 F.2d 1179, 1183 (6th Cir.1990). The inquiry for this court is thus whether Dr. Heath's First Amendment rights to free speech and political association were so evident from pre-existing law when he was discharged by the members of the Board of Trustees that, measured objectively, they were under an affirmative duty to refrain from such conduct. *Id.*

**5.** Paragraph 2 of Dr. Heath's contract sets forth his duties as President. Those duties include recommending to the Board,

the best methods of arranging the course of study and the proper instructional materials, and make written reports to the Board and to State agencies annually, and as otherwise required, in regard to matters pertaining to the educational interests of the College.

Additionally, the President shall put into practice the educational policies of the State and of the Board in accordance with the means provided by the Board; and, assist the Board in matters pertaining to the general welfare of the College. The President shall

also perform other duties from time to time which the Board may require.

**6.** The parties' briefs argued only causation, thus it appears that both parties presumed that Plaintiff's activities are protected by the First Amendment. This presumption cannot be made under *Pickering* for the reasons outlined by the Court. Regardless, the Plaintiff has the burden in this case of proving that his activities are protected. In failing to provide reasons why his interests as a private citizen in commenting upon matters of public concern outweigh the state's interest in promoting the efficiency of the public services it provides, he has failed to carry this burden.

This Court has already determined that Dr. Heath's activities are not protected by the First Amendment. Given that reasonable members of any Board of Trustees could have viewed Dr. Heath's activities as a hindrance on the provision of public education, and therefore could have believed Dr. Heath's activities *not* protected under the First Amendment, the Board members are immune from damages for terminating the employment of Dr. Heath insofar as the First Amendment is concerned.

### State Claims

The second and third counts of Plaintiff's First Amended Complaint raise state causes of action for breach of contract and intentional infliction of emotional distress under Michigan law. Federal courts have discretion to decide pendent state law claims if the federal and state claims arise out of a common nucleus of operative fact. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Thus, "[i]f the federal claims are dismissed before trial ... the state claim[s] should be dismissed as well." *Webb v. McCollough*, 828 F.2d 1151, 1160 (6th Cir.1987) (*quoting Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139). Because the Court concludes that Plaintiff has failed to state a claim under § 1983, the Court dismisses the state law claims without prejudice so that Plaintiff may pursue his remedies in the appropriate state forum. *See Reeves v. Besonen*, 754 F.Supp. 1135, 1142 (E.D.Mich.1991). Dismissal of Plaintiff's state law claims renders Plaintiff's motion for partial summary judgment on the breach of contract claim moot in this forum.

### Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is hereby GRANTED as to Count I of the complaint. Counts II and III of the complaint are dismissed without prejudice, thereby rendering Plaintiff's motion for partial summary judgment on Count II moot.