Dr. Robert R. MacMURRAY, Plaintiff,

v.

BOARD OF TRUSTEES OF BLOOMSBURG STATE COLLEGE et al., Defendants.

Civ. No. 76–1181

United States District Court, M. D. Pennsylvania.

Jan. 28, 1977.

As Amended Feb. 8 and April 4, 1977.

**1174**

Jon C. Lyons, Robert B. Elion, Robert B. Wayne, Williamsport, Pa., for plaintiff.

Jeffrey Cooper, Norman J. Watkins, Deputy Attys. Gen., J. Justin Blewitt, Jr., Deputy Atty. Gen., Chief, Civil Litigation, Robert P. Kane, Atty. Gen., Dept. of Justice, Harrisburg, Pa., John C. Youngman, Williamsport, Pa., for defendants.

## OPINION

MUIR, District Judge.

Dr. Robert R. MacMurray, a professor at Bloomsburg State College, has filed a complaint pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331 alleging that Dr. James H. McCormick the President of Bloomsburg State College, the Board of Trustees of Bloomsburg State College, and John Pittenger, the Secretary of Education of the Commonwealth of Pennsylvania have violated his constitutional rights by terminating his employment without prior notice or a hearing in violation of the due process clause of the Fourteenth Amendment to the United States Constitution. MacMurray also claims that Dr. T. J. Saini, Chairman of the Economics Department of Bloomsburg State College has violated his First Amendment rights, and has maliciously interfered with his contract rights and harassed him. MacMurray alleges that Saini began a campaign to have him dismissed because of his refusal to support Saini in the latter's effort to be elected President of the local chapter of the Association of Pennsylvania State College and University Faculties. On May 24, 1974, MacMurray signed an agreement with Bloomsburg State College whereby he agreed to take graduate courses in economics on the condition that the college grant him leave with pay for the fall semester of the 1974–1975 school year. On May 28, 1974, MacMurray received notification that he had been granted tenure as a professor at Bloomsburg. On August 5, 1974, MacMurray informed James H. McCormick, President at Bloomsburg State College, that he would not abide by the agreement of May 24, 1974. On January 8, 1975, McCormick wrote a letter to Dr. MacMurray in which he stated that he was terminating him for his refusal to abide by the agreement. McCormick stated that a college must be operated in an orderly and logical manner and agreements between the President of the College and faculty members must be honored. On January 15, 1975, McCormick, the President of Bloomsburg State College, told the Board of Trustees of that institution of his termination of MacMurray. According to an affidavit submitted by the Chairman of the Board of Trustees in support of their motion for summary judgment, it took no action except to acknowledge the receipt of this information. As a result of this termination, Dr. MacMurray was prevented from teaching at Bloomsburg State College from January 8, 1975 until September 11, 1975. MacMurray claims that his salary was also terminated as of January 8, 1975 for a period of approximately two months.

From February 28, 1975 until he was reinstated on September 11, 1975, he was paid his full salary by Bloomsburg State College as required by the collective bargaining agreement entered into between the Association of Pennsylvania State College and University Faculties and the Commonwealth of Pennsylvania, MacMurray being one of the professors specifically covered by the provisions of this agreement. MacMurray, pursuant to the terms of the

collective bargaining agreement, invoked its grievance proceedings. The Secretary of Education of the Commonwealth of Pennsylvania, John Pittenger, according to his affidavit, responded in writing to MacMurray's grievance and denied it. As provided by the collective bargaining agreement, MacMurray submitted his claim to arbitration pursuant to Article IV, Section (d). As a result of the arbitration, he was reinstated as a professor at Bloomsburg State College.

Pittenger and the Board of Trustees of Bloomsburg have filed a motion to dismiss MacMurray's complaint contending that he has not set forth their personal involvement in the alleged constitutional deprivation and that the Complaint is vague and conclusory as to them. The Board of Trustees of Bloomsburg State College has also moved to dismiss the complaint claiming that the Board partakes of the Commonwealth of Pennsylvania's sovereign immunity and therefore cannot be sued in a federal court because of the terms of the Eleventh Amendment of the United States Constitution. Pittenger, McCormick, and the Board of Trustees also seek to dismiss this action and in the alternative move for summary judgment, on the grounds that MacMurray's constitutional rights were not violated and that if his rights were violated they acted in good faith. The Defendant Saini has filed a motion to dismiss MacMurray's complaint claiming that his action is barred by the statute of limitations and that the Court should not take jurisdiction over the pendant state causes of action. The Court will consider these motions *seriatim*.

■ The motion of Pittenger and the Board of Trustees to dismiss MacMurray's complaint alleges that as to them it is conclusory and does not set forth facts which indicate personal involvement. Only paragraph 47 of MacMurray's complaint contains any allegation of facts relating to supposed unconstitutional acts by Pittenger and the Board of Trustees. Paragraph 47 states that Pittenger and the Board of Trustees failed to afford MacMurray a hearing prior to a summary termination on January 8, 1975 and that this was done in bad faith, was intentional, willful, and a knowing violation of MacMurray's rights under the due process clause of the Fourteenth Amendment of the United States Constitution. Although notice pleading is generally sufficient, this Circuit has found it necessary to impose a specific pleading requirement in civil rights actions in order to identify and dismiss frivolous suits. *Kauffman v. Moss,* 420 F.2d 1270, 1275–1276, (3d Cir. 1970), cert. den. 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); *Negrich v. Hohn,* 379 F.2d 213, 215 (3d Cir. 1967). See also *Fialkowski v. Shapp,* 405 F.Supp. 946, 949 (E.D.Pa.1975); *Downs v. Department of Public Welfare,* 368 F.Supp. 454, 463 (E.D. Pa.1973).

The complaint fails to set forth what actions Pittenger and the Board of Trustees of Bloomsburg State College took to terminate MacMurray's employment and when they were taken. The complaint's one paragraph statement of the claim is broad and conclusory. Consequently, Pittenger's and the Board of Trustees' motion to dismiss will be granted.

■ Pittenger and the Board of Trustees also move for dismissal pursuant to Rule 12(b) because they contend that they were not personally involved in the decision to terminate MacMurray. Since they have submitted affidavits to support their claim, the Court will construe their motion to dismiss for lack of personal involvement as a motion for summary judgment as provided for by Rule 12(b) of the Federal Rules of Civil Procedure. The requirement of personal involvement does not mean that an official must have committed the specific wrongful acts. When an official directs his subordinates to commit acts or when he has actual knowledge of their acts and acquiesces in them he is regarded as having been personally involved and is liable for such acts. *Fialkowski v. Shapp,* 405 F.Supp. 946, 950 (E.D.Pa.1975); *Moon v. Winfield,* 368 F.Supp. 843 (N.D.Ill.1973). Pittenger states in his affidavit that prior to MacMurray's presentation of his grievance after MacMurray had been fired, he had no knowl-

edge and played no role in the termination. The chairman of the Board of Trustees submitted an affidavit in which he stated that the Board of Trustees had no knowledge of the termination until January 15, 1975 and at that time took no action. MacMurray states in paragraph 47 of his complaint that the Board of Trustees and Pittenger failed to provide him with a hearing but he does not allege that they had any obligation to supervise the actions of college officials in terminating an employee. In addition, he does not state that they received periodic reports concerning such terminations before they occurred. This is not a factual situation like *Fialkowski v. Shapp, supra,* where Pittenger was found to be personally involved because he had general knowledge of the constitutional deprivations and had direct supervisory control which would have enabled him to prevent those violations. Here MacMurray has not alleged that Pittenger or the Board knew about his impending termination nor does he state that they had the power or the duty to do anything about it after the fact. Because MacMurray has not controverted the affidavits of Pittenger and the Chairman of the Board of Trustees, their allegations of non-involvement will be accepted as true. *Tunnell v. Wiley,* 514 F.2d 971 (3d Cir. 1975); *Bryant v. Com. of Ky.,* 490 F.2d 1273 (6th Cir. 1974).

In the light of the foregoing, Pittenger's and the Board of Trustees' motion for summary judgment will be granted.

Next, Pittenger, the Board of Trustees, and McCormick seek to dismiss MacMurray's complaint for failure to allege a violation of the due process clause of the Fourteenth Amendment. Because Pittenger and the Board of Trustees have been dismissed from this action for the reasons stated above, this motion to dismiss will be viewed as having been made by only McCormick.

■ McCormick argues that the grievance procedure provided MacMurray with all the protection required by the due process clause. To determine whether this contention is correct, two questions must be answered. First, was MacMurray deprived of any property interest which required notice and a due process hearing? Second, does the due process clause of the Fourteenth Amendment require in this factual setting that either an opportunity be provided to respond to charges or that a hearing be held prior to termination? MacMurray contends that he received no pay for approximately two months following the January 8 notification of termination. Although MacMurray was eventually paid his salary from this period, timely payment could not be denied him without some due process protection. In addition, as a result of the January 8 termination letter, MacMurray was deprived of the opportunity to teach for approximately eight months. If as MacMurray contends, he was separated from the mainstream of his occupation as a teacher, the denial of an important property interest was effected. *Lafferty v. Carter,* 310 F.Supp. 465, 470 (W.D.Wisc.1970).

■ The due process clause of the Fourteenth Amendment does not always require a hearing before a denial of a protected property interest takes place. Officials of a state college can make the decision to terminate a professor before providing him with a hearing. *Chung v. Park,* 514 F.2d 382, 387 (3d Cir. 1975). In *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), the Supreme Court of the United States concluded that a nonprobationary public official could be fired before being afforded a hearing. An opportunity to answer the charges prior to being fired and a post-termination hearing were found to be adequate to comply with due process. See *Thurston v. Dekle,* 531 F.2d 1264, 1273 (5th Cir. 1976). Because it is not clear from the pleadings or the affidavits submitted by the parties whether or not MacMurray received an opportunity to reply to the charges that were the basis for his termination prior to the letter of January 8, determination as to whether MacMurray's constitutional rights were violated cannot be made at this time.

In addition, an opportunity to refute charges is not always required. There are extraordinary situations where the damage

to a governmental entity caused by a retention of an employee outweighs any injury he suffers from being fired without an opportunity to explain his position. McCormick has not provided the Court with an explanation as to the damage that would have resulted to Bloomsburg State College if MacMurray had been given an opportunity to answer the charges against him or had had a hearing before his termination. MacMurray also has failed to set forth the extent of the injury he suffered by not being provided with a pre-termination hearing or a chance to answer the allegations that were the basis for his being fired. The Court at this point in the proceedings is not able to determine whether or not MacMurray's constitutional rights were violated by a post-termination hearing. *Peacock v. Board of Regents of University and State College of Arizona,* 510 F.2d 1324 (9th Cir. 1975); cert. den. 422 U.S. 1049, 95 S.Ct. 2668, 45 L.Ed.2d 701 (1975); *Thurston v. Dekle,* 531 F.2d 1264 (5th Cir. 1976); See *Roseman v. Indiana University of Pennsylvania, at Indiana,* 520 F.2d 1364 (3d Cir. 1975); *Sprague v. Fitzpatrick,* 3d Cir., 546 F.2d 560 (1976). If no factual disagreement exists, these issues should be disposed of by motions for summary judgment.

Pittenger, McCormick, and the Board of Trustees of Bloomsburg State College have moved for summary judgment alleging that even if their actions violated MacMurray's constitutional rights they are not liable because they acted in good faith. To establish a good faith defense to a civil rights action brought pursuant to 42 U.S.C. § 1983, a defendant must establish by a preponderance of the evidence that he acted without malicious intention to cause deprivation of constitutional rights or other injury to the Plaintiff and that he did not act with such disregard of the Plaintiff's clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith. *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). Because Pittenger and the Board of Trustees of Bloomsburg State College have been dismissed from this action for lack of personal involvement and because the allegations in MacMurray's complaint as to them were conclusory and vague, this motion for summary judgment will also be regarded as only having been made by McCormick. McCormick contends in his affidavit accompanying this motion that he acted without malice or bad will toward MacMurray and that he consulted with legal counsel before he wrote the termination letter of January 8, 1975. Whether or not McCormick has acted with malice toward MacMurray is an issue of credibility which should be determined by a trier of fact. On a motion for summary judgment the Court cannot examine demeanor, the way in which a witness reacts when testifying, and other factors which a trier of fact utilizes to determine credibility. In addition, McCormick has failed to establish that he meets the second test of good faith presented in *Wood, supra.* To satisfy that test, it is not enough that McCormick sought the advice of counsel. He must establish that his actions did not violate a clearly established constitutional right. Such a constitutional right can be so clearly established that it is unreasonable for a defendant to rely upon contrary advice from legal counsel. McCormick has not addressed this issue sufficiently in his affidavit. *Skehan v. Board of Trustees,* 358 F.Supp. 430 (M.D.Pa.1973), vacated and remanded 501 F.2d 31 (3d Cir. 1974), remanded 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1973), 538 F.2d 53 (3d Cir. 1976), *cert. denied* —— U. S. ——, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976). Consequently, McCormick's motion for summary judgment on the ground that he acted in good faith will be denied.

The Board of Trustees of Bloomsburg State College moved for dismissal of MacMurray's complaint because it contends that such an action is barred by sovereign immunity. Because the Board of Trustees of Bloomsburg State College has already been dismissed as a defendant in this case for lack of personal involvement and because the allegations against it were vague and conclusory there is no reason to resolve this claim.

Dr. T. J. Saini's motion to dismiss MacMurray's complaint contends that MacMurray's cause of action based upon the First Amendment is barred by the statute of limitations. Because 42 U.S.C. § 1983 does not contain its own statute of limitations, the Court is required to apply the statute of limitations which governs the most analogous claim under state law. *Ammlung v. City of Chester*, 494 F.2d 811 (3d Cir. 1974). Saini argues that the most analogous claim under Pennsylvania law is in tort and that the two year limitation of the Pennsylvania personal injury statute should apply. Act of June 24, 1895, P.L. 236, § 2, 12 P.S. § 34. MacMurray contends that the portion of Act of March 27, 1713, 1 Sm.L. 76 § 1, 12 P.S. § 31 which states "All actions of trepass quare clausum fregit, all actions of detinue, trover and replevin for taking any goods and cattle, all actions upon account and upon the case . . . all actions of debt grounded upon any lending, or contract without specialty, all actions of debt, for arrearages of rent . . . shall be commenced and sued within the time and limitation hereafter expressed and not after; . . . within six years next after the cause of such actions . . ." governs his action. The Court concludes that either the two year limitation of 12 P.S. § 34 or the one-year limitation upon the action of slander 12 P.S. § 31 is the most analogous claim. MacMurray in his complaint sets forth his constitutional cause of action against Saini as follows: "As a result of Defendant Saini's vicious and relentless harassment of Plaintiff, due to Plaintiff taking an independent position in a union election, Saini had violated Plaintiff's right to Free Speech and Assembly as protected by the First Amendment, to the United States Constitution." (MacMurray's complaint ¶ 50). Although MacMurray alleges a pendent state claim for interference with a contractual relationship, he does not contend in his complaint that Saini terminated his employment in violation of the due process clause of the Fourteenth Amendment. The First Amendment claim exists independently of any contract right. Even if MacMurray had no state created expectation of continued employment giving rise to the protection of due process, he would still possess a First Amendment claim. *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *deMarrais v. Community College of Alleghany County*, 407 F.Supp. 79 (W.D.Pa.1976).

Several federal courts faced with fact situations similar to the one in this case have applied the statute of limitations of state tort statutes. In *Holden v. Boston Housing Authority*, 400 F.Supp. 399 (D.Mass.1975), the Court held that an action pursuant to 42 U.S.C. § 1983 by a former employee of a housing authority stating that he was discharged for exercising his First Amendment rights was governed by a two-year statute of limitations applicable under Massachusetts law to actions in tort, rather than the six year statute of limitations applicable to actions in contract. In *Heyn v. Board of Supervisors of La. State University*, 417 F.Supp. 603 (E.D.La.1976), the Court concluded that a teacher's § 1983 action, which was based on allegations of retaliatory harassment and denial of promotion by his university following his exercise of freedom of speech, was governed by Louisiana's statute of limitations for tort claims, even though it was contended that the violation of the First Amendment constituted a breach of the teacher's contractual relationship with the university. In *Davis v. U.S. Steel Supply, Div. of U.S. Steel*, 405 F.Supp. 394 (W.D.Pa.1976) the Court applied the two year limitation of Pennsylvania's personal injury statute, Act of June 24, 1895, P.L. 236, § 2, 12 P.S. § 34, to Plaintiff's claim that she was subjected to various forms of racially motivated harassment by her fellow employees, including racial slurs, threats, and damage to her personal apparel. See *Wilson v. Sharon Steel Corporation*, 399 F.Supp. 403, 408 (W.D.Pa.1975); *Lombard v. Board of Education of City of New York*, 407 F.Supp. 1166, 1172 (E.D.N.Y.1976).

MacMurray cites no persuasive authority to support his contention that the six year statute of limitations applies to a claim pursuant to 42 U.S.C. § 1983 alleging a

violation of the First Amendment. The cases MacMurray presents in his brief involve either diversity jurisdiction or claims of termination of an employment contract in violation of 42 U.S.C. § 1981 or 28 U.S.C. § 459.

MacMurray contends that even if the two year statute of limitations governs, his claim is not barred because it did not arise until he received notification of his termination on January 8, 1975. The alleged violation of the First Amendment exists independently of the employment contract. This cause of action could have been brought before MacMurray was terminated. Since it came into being at the latest when the final harassment occurred on April 15, 1974 and since MacMurray did not file his complaint until September 10, 1976, the statute of limitations bars his claim.

Next MacMurray contends that his cause of action could not have been successfully brought until he had exhausted the available administrative remedy provided by the grievance proceedings. *Toney v. Reagan*, 467 F.2d 953 (9th Cir. 1972), cert. den. 409 U.S. 1130, 93 S.Ct. 951, 35 L.Ed.2d 263 (1973); *Becker v. Oswald*, 360 F.Supp. 1131 (M.D.Pa.1973). Because the grievance proceeding provided no damage remedy for a violation of First Amendment rights, it did not have to be utilized prior to the filing of a § 1983 action. Absent a clear showing that state administrative procedures afford a realistic alternative for an aggrieved litigant, the exhaustion of administrative remedies is not required. *Fialkowski v. Shapp*, 405 F.Supp. 946, 957 (E.D.Pa.1975); *Hayes v. Cape Henlopen School District*, 341 F.Supp. 823, 831 (D.Del.1972).

In the light of the foregoing, Saini's motion to dismiss MacMurray's First Amendment claim will be granted.

The Court will decline to exercise jurisdiction over the pendent state tort claims. Unless there is an independent jurisdictional base, the pendent claims must fall if the federal claim is dismissed. *Tully v. Mott Supermarkets, Inc., et al.* (3d Cir. 1976); *Royston v. Eastern Empire Corp.*, 393 F.Supp. 1010 (E.D.Pa.1975); *Reed v.*

*Philadelphia Housing Authority*, 372 F.Supp. 686 (E.D.Pa.1974). Consequently, the pendent state claims will be dismissed.

An appropriate order will be entered.