Harry T. KRYNICKY, Jr., Plaintiff,

v.

UNIVERSITY OF PITTSBURGH, Wesley W. Posvar, Paul N. Robinson, Rhoten A. Smith, Donald N. Henderson, Robert Nossen, Defendants.

Civ. A. No. 81–263.

United States District Court,
W.D. Pennsylvania.

April 5, 1983.

---

David F. Megnin, Kittanning, Pa., Marcel L. Groen, Bensalem, Pa., for plaintiff.

James J. Restivo, Jr., Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendants.

## OPINION

WEBER, District Judge.

Defendants seek summary judgment on all claims in this suit by a university professor for improper denial of tenure. For the reasons stated below, defendant's motion is denied as to plaintiff's First Amendment claim, and is granted as to all other claims.

Plaintiff, a former Assistant Professor of English at the Bradford Campus of the University of Pittsburgh, has claimed in his complaint that he was denied tenure in violation of his employment contract and his constitutional rights to free speech and procedural due process. Plaintiff also asserts a pendent state claim for intentional infliction of emotional distress. Other claims have been disposed of on a motion to dismiss or have been withdrawn. *See,* No. 81–263, slip op. (W.D.Pa., Nov. 17, 1981) (Ziegler, D.J.). Defendants seek summary judgment on all remaining claims on a variety of grounds which will be discussed more fully below.

## I. FACTS

The undisputed facts of record are summarized herein. In the summer of 1972, plaintiff was hired for a one year term of employment at the Bradford Campus for the 1972–73 school year. Upon completion of the one year term, plaintiff's contract was renewed for a three year term as Assistant Professor in the tenure stream for the period 1973 to 1976. That contract was later renewed for an additional three year term for the period 1976 to 1979. Plaintiff's employment with the University ended in April 1979.

Although the tenure process underwent various changes during the period in which plaintiff was employed by the University, the process existing at the relevant time may be essentially summarized as follows. The tenure process at the University required approval from University officials at each level in a many-tiered hierarchy. A refusal to recommend tenure by an official from any level in the process prevented the matter from proceeding to the next level and in effect ended the tenure process with the exception of appeals. Only the Chancellor of the University had the ultimate power to grant tenure, but an adverse decision at a lower level prevented review by the Chancellor.

During the period of plaintiff's employment with the University he was considered for tenure on three separate occasions. In 1976, an early recommendation for tenure was taken under advisement by the Promotion Tenure and Leave Committee, as was customary. In the fall of 1977, plaintiff was again considered for tenure on the recommendation of Dr. Vincent Kohler, Chairman of the Humanities Division, at the Bradford Campus. On this occasion, however, tenure was denied when Dr. Kohler withdrew his recommendation and cited a variety of deficiencies in plaintiff's performance of his duties. On the third occasion, in 1978, plaintiff received a favorable recommendation from the Promotion Tenure and Leave Committee, but the Provost, Dr. Rhoten Smith, refused to recommend plaintiff for tenure. The Provost's decision ended the tenure process and was in effect a denial of tenure. Plaintiff was informed of this decision by letter of June 7, 1978, from Dr. Richard McDowell, President of the Bradford Campus.

The University provides an appeals process for faculty members who wish to challenge unfavorable tenure decisions. Plaintiff was provided a copy of the University document on appeals and review, and University officials encouraged him to avail himself of those avenues of review. Plaintiff was also aware of the availability of the review process from his past service on the Promotion Tenure and Leave Committee.

Plaintiff did make timely request of Dr. Smith for a reconsideration of the denial of tenure. By letter of July 26, 1978, Dr. Smith reaffirmed his decision not to recommend tenure.

Rather than employ the next step in the University's appeals process, plaintiff then wrote to Dr. McDowell, President of the Bradford Campus, strongly expressing his doubts about the efficacy of the appeals

process. In response Dr. McDowell mailed to plaintiff a copy of the University's rules on appeal and review and again encouraged plaintiff to seek remedy through internal appeals.

By letter of July 5, 1979, after plaintiff completed his final year with the University, and nearly a year after Dr. Smith's decision on reconsideration, plaintiff requested the appointment of a Hearing Board to review the denial of the tenure decision. The request was directed to Dr. Smith who rejected it. Plaintiff had not complied with portions of the appeal process which precede review by a Hearing Board and his request was beyond the time limit provided in the University's rules.

## II. ANALYSIS

### A. Breach of Contract.[1]

Plaintiff contends that the University rules and policies regarding tenure formed part of his contract, and those rules required notification of denial of tenure prior to April 30, 1978, the end of the plaintiff's sixth academic year in the tenure stream. Notice of denial of tenure was given on June 7, 1978. Because no denial of tenure notice was made prior to April 30, 1978, plaintiff contends that he was, therefore, entitled to tenure under the contract.

Defendant responds that by the terms of the University's tenure rules, which plaintiff seeks to assume in his contract, the University has until the end of its fiscal year to make notification of tenure decisions. The fiscal year ended June 30, 1978, and therefore, the University contends, the June 7, 1978 notice was well within the time limits provided by University rules.

The pertinent provisions regarding tenure are contained in the Faculty Handbook. Paragraphs 8 and 9 limit a faculty member to seven years employment without tenure and require that a decision on tenure and notification be made prior to the end of the sixth year of employment.

8. The ranks of instructor, assistant professor, associate professor and professor comprise the tenure stream. If the teacher shall not have been given written assurance of promotion to the rank of Associate Professor by the end of the sixth year of appointment in the tenure stream, he or she should be notified that he or she has no expectation of such promotion or of receiving permanent tenure.

9. The total number of years which a faculty member may serve at this University without tenure in ranks, included under this Appointment and Tenure Plan shall not exceed seven. If a person has served for seven years in ranks included under this Appointment and Tenure Plan, he or she must either be promoted to Associate Professor or Professor or his or her services in the tenure stream terminated. Such notification shall be made prior to the end of the sixth year of service.

A year for the purpose of the tenure rules is defined in paragraph 14 as coinciding with the University's fiscal year. That paragraph provides:

14. In counting a "year" of appointment or of tenure, particularly at the Assistant Professor level, a year is recognized if the appointment becomes effective on or before December 31, the midpoint of the University's fiscal year. In cases where the appointment becomes effective on January 1 or later, the remainder of the year is disregarded for this purpose and the next fiscal year is counted as the first year of appointment under the tenure rules stated above.

Plaintiff, however, cites paragraph 7 to support its position that notification of the tenure denial was due at an earlier date.

7. The terms of appointment of Assistant Professors are normally three years. However, an individual may receive one appointment for a term of less than three years. Following appointment

---

1. The claim for breach of contract is directed only to the University. The individual defendants are not parties to the contract and may not be sued on it. *See*, 81–263, slip. op. (W.D.Pa. Nov. 17, 1981).

at this University with the rank of Assistant Professor for a 3-year term the University shall give written notice by the end of a second year stating whether the individual is to be reappointed beyond the third year of that term. The University shall notify in writing each Assistant Professor serving under a 2-year appointment by December 15, and under a 1-year appointment by March 15 of the terminal year of the appointment whether or not he or she will be reappointed.

This provision is clearly inapposite. By its terms it applies only to renewal of an appointment, a very different animal than the grant of tenure. The provisions regarding 1-year and 2-year appointments are inapplicable because plaintiff was serving a three year appointment when tenure was denied. Further, under paragraph 9, plaintiff could no longer be reappointed to a term for years. By its terms, paragraph 7 applies only to notice of reappointment, not tenure, and is therefore inapplicable to the plaintiff's situation.

█ Paragraph 14 of the faculty handbook clearly counts a year of tenure or appointment in terms of the University's fiscal year. Paragraph 9 requires notice prior to the end of sixth year. There is no more obvious place for application of paragraph 14 counting provisions than in determining the sixth year in paragraph 9. The language of these provisions is unambiguous and establishes that the June 7, 1978 notice was timely. Because these provisions are unambiguous summary judgment in favor of the defendant on the breach of contract claim is granted.

█ We also conclude that plaintiff is precluded from asserting his breach of contract claim because he failed to exhaust the administrative remedies provided by the University. The appeal process created and approved by the University faculty is detailed and thorough. Steps are provided for reconsideration, a written statement of reasons, review by an Appeal Board and finally review by a Hearing Board. Facially reasonable time limits are provided for each step in the process. It is undisputed that

plaintiff here properly invoked the reconsideration step but did not request a written statement of reasons or seek review by the Appeal Board. Approximately a year after the denial of tenure, plaintiff requested the appointment of a Hearing Board. The latter request was untimely and improper without the predicate of review by the Appeal Board and the request was denied.

The doctrine requiring the exhaustion of administrative remedies as a predicate to resort to the courts is well-established. *E.g. Myers v. Beth Shipbuilding Corp.,* 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938); *McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1968). The purposes of the doctrine are varied: To obtain a complete record for review; to permit decision by a body with specialized expertise; to accord proper deference to administrative bodies and their distinctive domain. *Id.,* at 194–195, 89 S.Ct. at 1662–1663.

We also recognize that the doctrine must be tailored to circumstances and requirements of the process and dispute at hand. *Id.,* at 195, 89 S.Ct. at 1663. The exhaustion doctrine has been applied in at least two instances to foreclose litigation in the context of University employment decisions. *Kowtoniuk v. Quarles,* 528 F.2d 1161 (4th Cir.1975); *Seefeldt v. Board of Trustees,* 487 F.Supp. 230 (D.D.C.1979). The rationale of the latter case is particularly persuasive.

█ Tenure decisions and interpretations of university tenure rules most strongly require decision in the first instance by those familiar with the requirements of tenure and the written university regulations. While we find no ambiguity in the university tenure provisions as discussed above, any novel interpretation of those provisions should have been presented in the first instance to the appropriate body in the university appeals process. Those persons, university officials and plaintiff's peers, are most intimately familiar with both the operation of the university tenure rules and the faculty's expectation of the manner of that operation. They too are most familiar

with the purposes underlying the provisions in question. The mere expectation that one will not succeed in the administrative appeal is not sufficient to excuse the failure to exhaust. *United States v. Felt and Tarrant Manufacturing Co.,* 283 U.S. 269, 273, 51 S.Ct. 376, 378, 75 L.Ed. 1025 (1931). In short, this court is not the proper original forum for contract disputes between faculty members and the University. *Seefeldt,* 487 F.Supp. at 233. Plaintiff's approach can only serve to weaken the appeal process within the university by encouraging litigants to ignore it. *Id; McKart,* 395 U.S. at 195, 89 S.Ct. at 1663. Because plaintiff failed to obtain administrative review of the tenure decision and contract dispute within the university he is precluded from asserting his claim for breach of contract in this forum.

## B. *Due Process*

Plaintiff claims that defendants denied him his constitutional right to procedural due process in the manner in which he was denied tenure. The undisputed facts of record establish that plaintiff had no property or liberty interest which would invoke a due process right and in any event, the procedural safeguards provided by the University clearly satisfy the requirements of due process.

■ Due process is only invoked where the plaintiff can demonstrate that the complained of action deprived him of a liberty or property interest. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). In the instant case, plaintiff has been unable to set forth facts supporting the existence of either a liberty or property interest.

■ Without an explicit grant of tenure, plaintiff must advance facts supporting a de facto grant of tenure. *Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570. We have determined above that plaintiff did not achieve tenure by operation of his employment contract. Plaintiff also asserts in an effort to establish a basis for de facto tenure that virtually all teachers who completed six years with the university were granted tenure and, therefore, plaintiff was also due tenure. Plaintiff, however, acknowledges that ultimately tenure can only be conferred by the University Chancellor and that the tenure rules specifically so provide. Nor does plaintiff advance any University policy conferring de facto tenure such as that existing in *Sindermann.* Any property interest is created and defined by the terms of the plaintiff's appointment. *Roth,* 408 U.S. at 578, 92 S.Ct. at 2709. Plaintiff's expectation that he would automatically be granted tenure after six years service is contrary to the express provisions of the faculty handbook and plaintiff's own understanding of the tenure system at the University. A mere unilateral expectation of continued employment does not give rise to a property interest. *Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548; *Montgomery v. Boshears,* 698 F.2d 739 (5th Cir.1983). Such is the nature of plaintiff's expectation and this is insufficient to invoke the protection of the due process clause.

■ Plaintiff also asserts the deprivation of a liberty interest. To establish the infringement of a liberty interest plaintiff must adduce facts indicating that the defendants made a charge or charges against the plaintiff which defendants could reasonably foresee might seriously damage his standing and association in the community and which would impose a stigma depriving plaintiff of the freedom to take advantage of other employment opportunities. *Roth,* 408 U.S. at 574, 92 S.Ct. at 2707. To support his position plaintiff asserts that defendants' refusal to award him tenure has made it impossible for him to obtain a position as a Professor at any other college or university, although he has obtained other work suited to his skills. We also note that plaintiff was informed of deficiencies in certain aspects of his job performance.

■ The mere denial of tenure, though it may make the employee less attractive to future employers, is alone insufficient to impinge a liberty interest. *Roth,* 408 U.S. at 574, n. 13, 92 S.Ct. at 2707, n. 13, *Lake*

*Michigan College Federation of Teachers v. Lake Michigan Community College,* 518 F.2d 1091 (6th Cir.1975); *Montgomery v. Boshears,* at 743 (5th Cir.1983). Nor are charges of failure to meet minimum standards, or of improper or inadequate job performance sufficient to deprive plaintiff of a liberty interest. *Lake Michigan College,* 518 F.2d 1091; *Blair v. Board of Regents,* 496 F.2d 322 (6th Cir.1974); *Shirck v. Thomas,* 486 F.2d 691 (7th Cir.1973). In the instant case plaintiff was criticized for a lack of structure in certain classes, easy grading and failure to complete paper work on time. None of these complaints assail plaintiff's honor, integrity or good name. They do not impose such a stigma as requires an opportunity to respond. Furthermore, there are no facts indicating that defendants could reasonably suspect that a denial of tenure would impose a stigma that would deprive plaintiff of future employment opportunities. The facts advanced by plaintiff cannot establish a deprivation of a liberty interest.

■ Even if we were to conclude that plaintiff was deprived of a liberty or property interest by defendants' decision to deny plaintiff tenure, we also must conclude from the undisputed facts of record that the university's procedural safeguards satisfied the requirements of due process. Plaintiff was promptly notified of all hearings on the proposal to grant him tenure. He was invited to attend these hearings and/or submit supporting materials. He was informed, prior to the 1978 Promotion Tenure and Leave Committee Hearing, of those aspects of his job performance which were considered unsatisfactory and the identity of the persons making those criticisms. He was permitted reconsideration and he obtained it. A written statement of reasons for the decision was available upon request. A multi-level appeal process was available for review of the adverse tenure decision. All these procedural safeguards were provided prior to the date termination became effective, as required. *Bell v. Burson,* 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971). Further, plaintiff was familiar with the University's tenure and appeals procedures having served on the Promotion Tenure and Leave Committee, and University officials supplied him with copies of the University's appeals procedures which they urged him to employ. Therefore, both the notice and procedural aspects of due process were satisfied by the University, and summary judgment in favor of defendants on plaintiff's due process claim will be granted.

## C.  *Local Agency Act*

Plaintiff has first raised by way of his response to defendant's motion for summary judgment a claim that he was entitled to a pre-termination hearing under the Local Agency Act. 2 Pa.C.S.A. § 551 et seq. In addition to the fact that this claim is untimely asserted, not having been identified in the complaint or any previous pleadings, we conclude that the requirements of the Act have been satisfied.

■ We note that the Act has been extended to a state university. *Kusnir v. Leach,* 64 Pa.Cmwlth. 65, 439 A.2d 223 (Pa. Commw.1982), but see, *Connor v. University of Pittsburgh,* SA 173 of 1981, slip. op. (March 12, 1981, Allegheny Co., Pa. Common Pleas). It has not, however, been specifically applied to a tenure decision. Assuming that the decision to deny tenure was an "adjudication" as defined in the Act, 2 Pa.C.S.A. § 101, those same procedural safeguards which we conclude have satisfied due process requirements would also suffice to dispose of any obligations imposed by the Act. Plaintiff was given notice of all hearings and an opportunity to be heard and present evidence. The decision was provided in writing and written reasons and findings were available on request. Nothing more is required.

## D.  *Statutes of Limitations*

■ Defendants advance the position that plaintiff's remaining claims are barred by the applicable Pennsylvania statutes of limitations. As to plaintiff's claim for intentional infliction of emotional distress, we agree. The two year limitation of 42 Pa.C.

S.A. § 5524 is the provision governing claims for intentional infliction of emotional distress. *Bruffet v. Warner Communications, Inc.,* 692 F.2d 910, 914 (3d Cir.1982); *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1271 (3d Cir.1979); *Culbreth v. Simone,* 511 F.Supp. 906, 915 (E.D.Pa. 1981). Plaintiff's cause of action arose when the decision to deny tenure was communicated. At latest that would be July 26, 1978, when Dr. Smith informed plaintiff of his decision on reconsideration. This lawsuit was not filed until February 18, 1982, well outside the two year limitation. Consequently, plaintiff's claim for intentional infliction of emotional distress is barred by the appropriate statute of limitation.

Defendants also interpose 42 Pa.C.S.A. § 5524 as a bar to plaintiff's claim under 42 U.S.C. § 1983 for violation of first amendment rights. Specifically, plaintiff has alleged that the decision to deny tenure was made in retaliation for plaintiff's outspoken criticisms of the university administration and his unorthodox teaching methods. Defendants characterize plaintiff's claim as one in tort, and urge application of Pennsylvania's two year limitation. Plaintiff on the other hand seeks to apply the Pennsylvania six year limitation of 42 Pa.C.S.A. § 5527.

Because Congress has not provided a limitation period for Section 1983 actions, the court must apply the statute of limitations which governs the most analogous state claim. *E.g. Polite v. Diehl,* 507 F.2d 119 (3d Cir.1974); *Ammlung v. City of Chester,* 494 F.2d 811 (3d Cir.1974). We conclude that plaintiff's claim is most analogous to the state action for intentional interference with a contractual relationship and will be governed by the six year limitation period.

In *Skehan v. Board of Trustees of Bloomsburg State College,* 590 F.2d 470 (3d Cir.1978), the court considered the limitation period properly applicable to a professor's Section 1983 action for discharge in violation of his first amendment rights. The court concluded that the six year limi-

tation period was applicable, rejecting the argument that the two year limitation period barred the claim.

*Skehan,* however, was decided on the now repealed limitation provisions at 12 Pa.Stat. Ann. §§ 31 and 34. The decision was based in part on the conclusion that the two year limitation period applied only to bodily injuries. The new statute at 42 Pa.C.S.A. § 5524 extends to certain personal injuries not previously encompassed by the repealed statute.

Although *Skehan* is not dispositive of the issues in the instant case its methodology is still valid in other respects. The court must characterize the nature of plaintiff's claim and determine the most analogous state cause of action. Each case will turn on its factual setting.

In a number of instances courts have applied the limitations period for state tort claims to Section 1983 actions for first amendment violations in an employment setting. *MacMurray v. Board of Trustees of Bloomsburg State College,* 428 F.Supp. 1171 (M.D.Pa.1977); *Holden v. Boston Housing Authority,* 400 F.Supp. 399 (D.Mass.1975); *Heyn v. Board of Supervisors of Louisiana State University,* 417 F.Supp. 603 (E.D.La.1976). Those courts characterized the claims as essentially tortious in nature and analogous to defamation or intentional infliction of emotional distress.

In the instant case, however, plaintiff's claim is more nearly analogous to a state action for intentional interference with a contractual relationship. Plaintiff claims that defendants in effect terminated his employment or prevented the attainment of permanent employment with the university and that the motivation for this activity was plaintiff's past expressions of criticism. In essence, it is alleged that the defendants wrongfully interfered with plaintiff's employment possibilities within the university. The court in *Skehan,* faced with a markedly similar Section 1983 claim, found it most nearly analogous to the state action for interference with a contractual relationship. Unlike the situation present in *MacMurray,*

the plaintiff's First Amendment claim is not clearly separable from the allegations of wrongful discharge. Although a pendent claim for intentional interference with a contractual relationship was previously dismissed in this case for the inability to plead the necessary element of lack of privilege, plaintiff's Section 1983 claim for violation of first amendment rights most nearly resembles that state cause of action. The six year limitation period of 42 Pa.C.S.A. § 5527 governs actions for interference with a contractual relationship. *Culbreth,* 511 F.Supp. 906; *Riccobonno v. Whitpain Township,* 497 F.Supp. 1364 (E.D.Pa.1980). For the reasons stated above, the six year limitation period will be applied to plaintiff's Section 1983 claim for first amendment violations. Consequently, plaintiff's claim is timely and not barred by the Pennsylvania limitations period.

### E. *Dr. Donald Henderson*

Plaintiff in his deposition testimony admits that he has no knowledge of any wrongdoing in this matter on the part of Dr. Donald Henderson, a named defendant. Relying on this admission, Dr. Henderson seeks summary judgment in his favor on all claims.

Plaintiff alleges in his complaint that Dr. Henderson participated in the tenure review process, but does not attribute any particular actions to Dr. Henderson specifically. Rather than advance any evidentiary material, plaintiff seeks to resist Dr. Henderson's motion solely on the allegations of the complaint. Plaintiff claims in his brief that these allegations, after full trial, "may indicate Dr. Henderson's level of involvement."

Fed.R.Civ.P. 56 does not "permit plaintiffs to get to a jury on the basis of the allegations in their complaints, coupled with the hope that something can be developed at trial in the way of evidence to support those allegations." *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). Defendant Henderson has made and properly supported a motion for summary judgment, and plaintiff may not rest

on the mere allegations of his complaint. *Id.,* at 288, 88 S.Ct. at 1592; *Tilden Financial Corp. v. Palo Tire Service Inc.,* 596 F.2d 604 (3d Cir.1979). Summary judgment will therefore be granted in favor of Dr. Henderson on all claims.

### III. CONCLUSION

For the reasons stated above, summary judgment in favor of defendant University is granted on plaintiff's claim for breach of contract. Further, summary judgment in favor of all defendants is granted on plaintiff's pendent state claim for intentional infliction of emotional distress and on plaintiff's section 1983 claim for due process violations. Summary judgment in favor of Dr. Donald Henderson is granted on all claims. Summary judgment on plaintiff's Section 1983 claim for First Amendment violations is denied.